ALBERTSON'S, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Albertson's, Inc. v. Commissioner
Docket No. 10439-87
United States Tax Court
T.C. Memo 1990-153; 1990 Tax Ct. Memo LEXIS 177; 59 T.C.M. (CCH) 186; T.C.M. (RIA) 90153; March 21, 1990
*177 In 1985 petitioner obtained certifications from state agencies that certain of its employees hired prior to 1983 were eligible for welfare assistance prior to employment or were hired pursuant to a work incentive program. Petitioner claimed WIN credits with respect to these employees under sections 40, SOA, and 50B, I.R.C. 1954, for its fiscal year beginning after 1982. Held, the parties' stipulation as to the interpretation of the Code sections at issue is ineffective to bind the Court as it is a stipulation as to a question of law. Held further, petitioner does not satisfy the certification requirement under section 51(d)(15) of the Targeted Jobs Credit, as amended by ERTA. Robert S. Erikson, Edwin V. Apel, Jr., Cathy R. Silak, and David A. Channer, for the petitioner. Joyce Brit, Julia Dewey, and Virginia Draper, for the respondent. FAY
*338 MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency in petitioner's Federal income tax for its fiscal year ending February 3, 1983, in the amount of $ 718,936. Originally, three issues were presented for decision: (1) the investment tax credit issue; (2) the WIN Credit issue; and (3) the deferred compensation/interest issue. By an Order dated December 27, 1988, we severed the investment tax credit issue from the other two issues *180 and decided that issue in petitioner's favor. See Albertson's, Inc. v. Commissioner, T.C. Memo. 1988-582. Supplemental briefs with respect to the WIN Credit and deferred compensation/interest issues were ordered filed. For convenience, we separate the two remaining issues and here decide only the WIN Credit issue. More specifically, we decide whether petitioner is entitled to claim tax credits, determined under sections 40, 50A, and *339 50B, [1] with respect to wages paid to certain of its employees previously on welfare or hired pursuant to a work incentive program. Our decision of the deferred compensation/interest issue will be forthcoming in a separate opinion of this Court. FINDINGS OF FACT Some of the facts have been stipulated. The Stipulations of Fact and attached exhibits are incorporated by reference. During the year at issue, petitioner, Albertson's, Inc., was an accrual basis taxpayer operating over 400 retail food and drug *181 stores in the western, southern, and southeastern United States. Petitioner, a Delaware corporation, had its principal place of business in Boise, Idaho, at the time the petition in this case was filed. Petitioner's taxable year at bar ended February 3, 1983. On March 26, 1984, respondent initiated an audit (the Audit) of petitioner's corporate income tax return for that fiscal year. The Audit did not conclude until 1987. During the Audit, petitioner discovered it employed certain individuals with respect to whom petitioner thought a tax credit (the WIN Credit) equal to a portion of the wages paid those employees during the year at issue might be available. On July 10, 1985, petitioner engaged Government Program Services, Inc. (GPSI) to assist petitioner in meeting the requirements for claiming the WIN Credit. Specifically, GPSI agreed to: (1) identify all employees of petitioner who might have satisfied the requirements of section 50B(h)(1)(A); and (2) acquire from appropriate state agencies certification indicating, with respect to those employees, certain prerequisites for claiming the WIN Credit were established. Pursuant to its commitment under the contract, GPSI sought *182 the necessary certification of petitioner's employees by making written requests to the appropriate agencies in the fourteen different states in which those employees were employed. GPSI's written requests were made on dates between July 22, 1985, and August 19, 1985, inclusive. The certification provided by the state agencies took the form of letters, dated between August 26, 1985, and October 15, 1986, verifying that a total of 121 of petitioner's employees (WIN Employees) satisfied the requirements of section 50B(h)(1)(A). Specifically, these letters certified the WIN Employees either: (1) were eligible for financial assistance under Part A of Title IV of the Social Security Act (welfare assistance) and continually received welfare assistance during the 90 day period prior to the date petitioner hired the WIN employees; or (2) were placed in employment under a work incentive program established under section 432(b)(1) of the Social Security Act. Although the WIN employees were hired by petitioner on various dates prior to January 29, 1982, petitioner did not seek certification for any of its WIN Employees until at least three and one-half years after the date they began *183 working for petitioner. During the Audit, petitioner provided respondent with the certification letters obtained by GPSI from the various state agencies. At the conclusion of the Audit in January 1987, respondent permitted petitioner a WIN Credit for the year at issue in the amount of $ 141,795.13. On March 6, 1987, respondent issued the notice of deficiency upon which this case is based, determining adjustments to petitioner's income based on items unrelated to the WIN Credit. Petitioner timely filed a petition with this Court. Respondent for the first time raised the WIN Credit issue in his Answer, alleging petitioner was not entitled to the $ 141,795.15 in tax credits previously allowed during the Audit. Before trial the parties stipulated: 65. The only legal issues remaining for trial with respect to the WIN tax credit issue are the following: (a) whether the certification required to be obtained by Code § 50B(h)(1)(A) was required to be obtained prior to the dates the certifications were obtained by the Petitioner in the matter before the Court; and (b) whether "substantially full-time" as referred to in Code § 50B(h)(1)(B) means 20 hours per week, 30 hours *184 per week, or something other than those two alternatives. The opening and reply briefs filed by the parties addressed all issues presented for decision. With respect to the WIN Credit issue, the parties concentrated on their interpretation of the questions presented for decision as expressed in the above-referenced stipulation. That is, the parties argued whether the requirements of sections 50B(h)(1)(A) and 50B(h)(1)(B) were met with respect to certain of petitioner's employees for the year at issue. On December 27, 1988, the Court ordered the parties to address in supplemental briefs what impact, if any, the amendments to sections 50B and 51, made by the Economic Recovery Tax Act of 1981, Pub. Law 97-34, 95 Stat. 172 ("ERTA"), had on the WIN Credit issue. Supplemental briefs were filed by the parties as ordered. *340 OPINION In its supplemental brief, petitioner first argues the Court is bound by the parties' stipulation and may consider only those issues stipulated by the parties. We disagree. Rule 91(e) sets forth the binding effect of a stipulation. Generally, a stipulation of *185 fact is a conclusive admission, controlling on the parties and enforced by the Court. Rule 91(e). However, this Court is not bound by a stipulation as to a question of law. Swift & Co. v. Hocking Valley Ry.Co., 243 U.S. 281, 289 (1917); Marquissee v. Commissioner, 11 B.T.A. 334 (1928), affd. 47 F.2d 32 (3d Cir. 1931). To be so bound could cause this Court to reach an absurd result unsupported by law. The parties stipulated the "only legal issues remaining for trial" were whether petitioner satisfied sections 50B(h)(1)(A) and 50B(h)(1)(B). This is a stipulation as to a question of law by which we are not bound. Accordingly, we will decide the applicability of section 51 with respect to the year at issue. Alternatively, in the event we find our consideration is not bound by the parties' stipulation, petitioner argues its entitlement to the WIN Credit during the year at issue, with respect to most of petitioner's WIN Employees, was still controlled by section 50B despite the amendments made by ERTA to that section and section 51. Respondent argues the WIN Credit (sections 40, 50A, and 50B prior to amendment by ERTA) was merged *186 into section 51's Targeted Jobs Credit by ERTA prior to the year at issue. Respondent asserts section 51 controls and petitioner does not qualify for either the WIN Credit or the Targeted Jobs Credit because petitioner has not satisfied the prerequisites for those credits found in section 51(d)(15) (now section 51(d)(16)). Prior to ERTA, the WIN Credit was allowed by section 40 and determined under sections 50A and 50B. Under section 50A(a) as it appeared prior to ERTA, the amount of the WIN Credit allowed by section 40 was a specified percentage of first and second year "work incentive program expenses" of the taxpayer. "Work incentive program expenses" were generally defined by pre-ERTA section 50B(a) (1) as "the amount of wages paid or incurred by the taxpayer for services performed by eligible employees." The term "eligible employee" was defined by pre-ERTA section 50B(h) (1) as follows: (h) Eligible Employee. -- (1) Eligible employee. -- For purposes of this subpart the term "eligible employee" means an individual -- (A) who has been certified by the Secretary of Labor or by the appropriate agency of State or local government as -- (i) being eligible for *187 financial assistance under part A of title IV of the Social Security Act and as having continually received such financial assistance during the 90-day period which immediately precedes the date on which such individual is hired by the employer, or (ii) having been placed in employment under a work incentive program established under section 432(b)(1) of the Social Security Act, (B) who has been employed by the taxpayer for a period in excess of 30 consecutive days on a substantially full-time basis (except as provided in subsection (i)), (C) who has not displaced any other individual from employment by the taxpayer, and (D) who is not a migrant worker. The term "eligible employee" includes an employee of the taxpayer whose services are not performed in connection with a trade or business of the taxpayer. (2) Migrant worker. -- For purposes of paragraph (1), the term "migrant worker" means an individual who is employed for services for which the customary period of employment by one employer is less than 30 days if the nature of such services requires that such individual travel from place to place over a short period of time. [Emphasis added.] Section 44B (currently *188 section 38(b)(2)), however, allows a separate Targeted Jobs Credit determined under section 51. The amount of the Targeted Jobs Credit is a specified percentage of first and second year "qualified wages" paid by the taxpayer during the year. Sec. 51(a). Section 51(b)(1) defines "qualified wages" as "wages paid or incurred by the employer during the taxable year to individuals who are members of a targeted group." "Members of a targeted group" are listed in section 51(d)(1). Sections 50A, 50B, and 51 were amended by ERTA in order to merge the WIN Credit into the Targeted Jobs Credit. First, ERTA effectively eradicated a separate WIN Credit by amending section 50B(a) to provide "The term 'work incentive program expenses' shall not include any amount paid or incurred in any taxable year beginning after December 31, 1981." Sec. 50B(a)(5). Further, to merge the WIN Credit into the Targeted Jobs Credit, ERTA amended section 51(d)(1) to include "an eligible work incentive employee" in the list of individuals who are "members of a targeted group." Sec. 51(d)(1)(H). Again, it is wages paid *341 to *189 a member of a targeted group that are eligible for the Targeted Jobs Credit. See sec. 51(d)(1). Thus, "eligible work incentive employees" became members of a "targeted group" effective for taxable years beginning after December 31, 1981. Section 261(g)(1)(B) of ERTA. Eligible work incentive employees are defined in section 51(d)(9) as follows: (9) Eligible work incentive employees. -- The term "eligible work incentive employee" means an individual who has been certified by the designated local agency as -- (A) being eligible for financial assistance under part A of title IV of the Social Security Act and as having continually received such financial assistance during the 90-day period which immediately precedes the date on which such individual is hired by the employer, or (B) having been placed in employment under a work incentive program established under section 432(b)(1) or 445 of the Social Security Act. [Emphasis added.] In addition to including eligible work incentive *190 employees in the list of members of a targeted group, ERTA added a certification requirement to section 51 previously not required under either the WIN Credit or the Targeted Jobs Credit. Section 51(d)(15) [as noted, now section 51(d)(16)] in relevant part provides: (15) Special rules for certifications . -- (A) In general. -- An individual shall not be treated as a member of a targeted group unless, on or before the day on which such individual begins work for the employer, the employer -- (i) has received a certification from a designated local agency that such individual is a member of a targeted group, or
(ii) has requested in writing such certification from the designated local agency. [Emphasis added]. Thus, pursuant to section 51(d)(15), an employer must receive or request in writing certification that an employee is a member of a targeted group on or before the day the employee begins work. This requirement will be referred to as the Section 51(d)(15) Certification Requirement. Petitioner concedes the Targeted Jobs Credit applies with respect to wages paid after December 31, 1981, to its WIN employees who began working *191 after December 31, 1981. Petitioner also concedes those employees did not satisfy the Section 51(d)(15) Certification Requirement of the Targeted Jobs Credit. [2] Petitioner argues, however, this requirement does not apply with respect to wages paid its WIN Employees after December 31, 1981, who began employment prior to January 1, 1982. Petitioner's argument is deduced as follows. The Section 51(d)(15) Certification Requirement only applies to "members of a targeted group" under section 51(d)(1). The merger of the WIN Credit into the Targeted Jobs Credit was not effective until after December 31, 1981. Thus, petitioner reasons, "eligible work incentive employees" did not become members of a "targeted group" under section 51 until after that date. Petitioner asserts its WIN Employees were not "members of a targeted group" prior to January 1, 1982, and, accordingly, did not have to meet the Section 51(d)(15) Certification Requirement if hired before *192 that effective date. Respondent argues the Section 51(d)(15) Certification Requirement applies with respect to all wages paid to the WIN Employees after December 31, 1981, regardless of whether those employees began their employment before or after December 31, 1981. We agree with respondent. The transitional rules under ERTA provide the Section 51(d)(15) Certification Requirement applies to "all individuals whether such individuals began work for their employer before, on, or after [August 13, 1981, the date of ERTA's enactment]." Section 261(g)(2)(A) of ERTA (emphasis added). Thus, by virtue of the transitional rules, petitioner's WIN Employees were deemed to be members of a "targeted group" prior to the effective date of the merger of the WIN Credit and the Targeted Jobs Credit. The transitional rules state, with respect to the addition of "eligible work incentive employees" to the list of members of a "targeted group," section 51(a) and (b) "shall be applied for taxable years beginning *193 after December 31, 1981, as if such employees had been members of a targeted group for taxable years beginning before January 1, 1982." Sec. 261(g)(1)(B) of ERTA, (emphasis added). For petitioner to have been entitled to the Targeted Jobs Credit for the year at issue, at a time when the WIN Credit was no longer available (after December 31, 1981), petitioner was required to obtain certification in accordance with section 51(d)(15) or meet the grace period for retroactive certifications under the transitional rules of section 1.51-1(d)(3), Income Tax *342 Regs.[3] Petitioner did not satisfy either the Section 51(d)(15) Certification Requirements or the transitional rules. Accordingly, we hold petitioner is not entitled to the WIN Credit with respect to wages paid its otherwise eligible work incentive employees for the fiscal year at issue. *194 To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated↩
2. The parties stipulated the employees at issue were all hired on dates prior to January 29, 1982. Thus, petitioner's concession applies only to employees hired after December 31, 1981, and before January 29, 1982.↩
3. The transitional rules under section 1.51-1(d)(3), Income Tax Regs., granted relief to employers from strict application of the certification requirements found in section 51(d)(15) with respect to certain employees. Relief was granted by permitting employers to obtain, within a limited grace period, retroactive certification↩ of employees beginning employment after June 28, 1981, and on or before September 26, 1981. The employer must either receive, or request in writing, a certification before September 26, 1981.