**SOUTHLAND CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–435T.**

United States Court of Federal Claims.

May 8, 1995.

James L. Malone III, along with Lydia R.B. Kelley, McDermott, Will & Emery, Chicago, IL, and Evan M. Migdail, of counsel, Camp, Barsh & Tate, Washington, DC, for plaintiff.

Bartholomew Cirenza, along with Steven I. Frahm, Senior Trial Atty., Mildred L. Seidman, Section Chief, and Loretta C. Argrett,

**346**

Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

## OPINION

SMITH, Chief Judge.

This case is before the court on defendant's motion for summary judgement. At issue is the allowance of certain targeted jobs credits for taxable years 1982 and 1983. This category of targeted jobs credits was formerly known as the Work Incentive Program (WIN). WIN, enacted by Pub.L. No. 92–178, Dec. 10, 1971, 85 Stat. 554, was codified under § 40, 50A and 50B of the 1954 Internal Revenue Code (IRC). To receive these tax credits for an employee, the employer must have first certified that the employee was eligible for the credit. The WIN program allowed an employer to certify employees for WIN credits "retroactively," *i.e.,* after an employee's date of hire. The Economic Recovery Tax Act (ERTA), which repealed WIN, requires tax credit certification on or before the employee's date of hire.[1] Once enacted, ERTA became effective for tax years beginning after January 1, 1982. Plaintiff argues that ERTA allows for retroactive certification of employees for taxable years after 1982 if the employees were hired before ERTA's effective date of January 1, 1982. In response, defendant asserts that ERTA precludes retroactive certification after September 26, 1981. After careful consideration of the briefs, the relevant law, and oral argument, this court must grant defendant's motion for summary judgement.

## BACKGROUND

Plaintiff is a Texas-based corporation conducting business primarily under the name 7–Eleven. It is the largest convenience store chain in the world, with over 14,600 company-operated, franchised and licensed locations worldwide, and is among the nation's largest retailers.

Prior to 1982, there were two types of tax credits available to employers such as plaintiff who had hired employees eligible for Social Security assistance: the Work Incen-

tive Program credit and the targeted jobs credit. The WIN program was created in 1971 to stimulate businesses to hire employees who might otherwise receive public assistance. The major categories of WIN-eligible employees were: 1) recipients of Social Security assistance, and 2) members of the Social Security work incentive programs. Participating employers were required to submit certifications from state agencies that their employees were either receiving welfare assistance or participating in a work incentive program at the time they were hired. In return, the employer would receive a tax credit equal to a portion of the employee's first- and second-year wages. The WIN credit, before being superseded by ERTA, allowed employers to certify employees for the credit after the employees had been hired.

In order to streamline the regulations and prevent confusion between the credits, Congress in 1981 enacted ERTA, which merged all WIN credits into a category of the targeted jobs credit. IRC § 51(d)(1)(H), 51(d)(9); ERTA § 261(b)(1). The provisions of ERTA modified employee certification requirements, generally preventing retroactive certification. IRC § 51(d)(16); ERTA § 261(g)(2)(A).

During the years 1980 and 1981, plaintiff hired numerous employees who qualified for the WIN credits. However, most of these employees were not certified as WIN-eligible at the time of their hire, or even before the end of taxable year 1983.[2]

In 1985, plaintiff began requesting the necessary WIN certification from their WIN-eligible employees hired in 1980 and 1981. Requests and responses continued throughout 1986, ending near the beginning of 1987. In the hopes of reserving its right to a WIN refund for tax years 1982 and 1983, plaintiff on March 10, 1986, filed a protective claim for the tax year 1982, using a Form 1120X (Amended U.S. Corporation Income Tax Return), to give notice of a future claim for a tax refund for a yet-to-be determined WIN credit amount (noted as "$1.00 plus") for

---

1. Economic Recovery Tax Act, Pub.L. No. 97–34, 95 Stat. 172 (1981).

2. Plaintiff's fiscal year mirrors the calendar year.

1982. On March 10, 1987, plaintiff, having obtained the appropriate WIN-certification information for tax years 1982 and 1983, submitted additional 1120X forms for these years. Plaintiff claimed $365,859 in WIN credits for 1982, and $52,393 in WIN credits for 1983. The IRS denied plaintiff these WIN credits, claiming that the Economic Recovery Tax Act (ERTA) of 1981 amended the tax code to prevent employers from retroactively certifying employees for the WIN program after the 1981 tax year.

Plaintiff filed its complaint in this court on July 13, 1993, claiming the sum of the targeted jobs credits it is allegedly owed for tax years 1982 and 1983: $418,252. Defendant now moves for summary judgement, asserting that under the provisions of ERTA, plaintiff has no legal claim to a refund.

## DISCUSSION

Before enactment of ERTA, the Internal Revenue Code defined an "eligible employee" for purposes of the WIN program as one who "has been certified by ... the appropriate agency of state or local government [as eligible]." ERTA kept this definition for purposes of the targeted jobs credit with only minor technical changes. IRC § 51(d)(9). Unlike WIN, however, ERTA expressly requires that certifications for members of targeted groups "must be obtained or requested on or before the day on which such individual begins work." IRC § 51(d)(16); ERTA § 261(c)(1). The parties agree that retroactive certifications of employees were acceptable before ERTA's passage in the Senate on July 23, 1981. Therefore the issue in this case is whether retroactive certifications are allowable for employees hired before 1982, but who were not certified until the period from 1985 to 1987. For several reasons, this court finds that plaintiff misinterprets ERTA's requirements regarding employee certification.

The ERTA became effective for work incentive employees in taxable years beginning after December 31, 1981, providing that

in the case of an eligible work employee, subsections (a) and (b) of section 51 of such Code [establishing the newly expanded targeted jobs credit] shall be applied for taxable years beginning after December 31, 1981, *as if* such employees had been members of a targeted group for taxable years beginning before January 1, 1982. ERTA, § 261(g)(1)(B). (This provision will hereafter be referred to as the "transition provision.") (Emphasis added.)

Plaintiff asserts a refund claim for 1982 and 1983, taxable years which begin after December 31, 1981. Plaintiff interprets the transition provision as allowing WIN employees, who were not required to be certified at any specific time under the WIN provisions, to remain eligible for retroactive certification after the ERTA's enactment. Under plaintiff's interpretation, the transition provision works as a "grandfather clause" to allow employers to disregard the more stringent ERTA requirements for employees that were hired before 1982, when the WIN program was active.

The statutory language of ERTA, as contained in § 261(c)(1) and § 261(g)(2)(A), contravenes plaintiff's assertion that the transition provision creates a grandfather clause for purposes of certification. ERTA § 261(g)(2)(A), provides unequivocally that

the amendment made by [ERTA § 261(c)(1), requiring certification by the hiring date] shall apply to all individuals whether such individuals began work for their employer before, on, or after the date of this Act. *Id.*

The court believes that the statute is clear on its face. However, to rest any doubts, a reading of the legislative history confirms this interpretation. Congress' purpose in abolishing retroactive certifications after September 26, 1981 is clear: to ensure that employees were not hired before the employer knew such individuals were members of targeted groups. *Lucky Stores v. Commissioner*, 92 T.C. 1151, 1989 WL 55669 (1989), *acq. in part*, 1990–2 C.B. 1, quoting Staff of J. Comm. on Taxation, General Explanation of the Economic Recovery Tax Act of 1981 (J. Comm. Print 1981). Allowing these certifications provided "the potential for substantial revenue losses if retroactive certifications continue[d]." *Id.* This is quite logical since the purpose of the incentive was to promote

intentional hiring of individuals who might otherwise be on public assistance, rather than to reward employers for discovering this quality about employees previously hired. This court finds that Congress manifested a clear intent to abolish retroactive certifications quickly after ERTA's enactment, making

> this [certification] change ... generally effective on July 23, 1981, the date on which the Senate passed the provision. *Id.*

In addition, other courts, in a virtually identical case, have reached the same conclusions as to the meaning of ERTA's certification provisions. In *Albertson's, Inc. v. Commissioner of Internal Revenue*, 59 T.C.M. 186, 1990 WL 29271 (1990), *aff'd in part*, 38 F.3d 1046 (9th Cir.1993), *op. withdrawn and reh'g granted*, April 11, 1994, the plaintiff lost on a claim for WIN credits which mirror the facts of the instant case. In *Albertson's*, the plaintiff claimed WIN credits for the fiscal year beginning after 1982, for employees not certified until 1985, yet hired in 1981 or earlier. As in the instant case, the plaintiff argued in *Albertson's* that only employees hired after December 31, 1981, were subject to the more restrictive ERTA certification requirements due to ERTA's transition provision. The Tax Court and Ninth Circuit rejected the plaintiff's interpretation in *Albertson's*, agreeing with the Commissioner that

> the Section 51(d)(15) Certification Requirement [the stricter ERTA requirement] applies to all individuals regardless of whether the employees began their employment before or after December 31, 1981. *Albertson's*, 59 T.C.M. at 189, 1990 WL 29271 (1990). *See also Albertson's*, 38 F.3d at 1050 (1993).

Before ordering a rehearing in this case on other grounds, the Ninth Circuit ultimately held that "section 261(g)(2) clearly abolishes retroactive certification for all claims made after September 26, 1981." *Id.* at 1051. This court agrees with the Ninth Circuit's affirmance of the Tax Court analysis of the retroactive certification issue.

Plaintiff also cites *Lucky Stores*, an ERTA case in which the Tax Court allowed retroactive certification for tax years prior to 1982.

For two reasons, this court finds that *Lucky Stores* result is distinguishable from the instant case, but that its rationale provides additional weight for the rejection of plaintiff's refund claim. First, the Tax Court noted that the intent behind ERTA was the immediate abolition of retroactive certification, and made the following deduction:

> That Congress recognized that there was a potential for substantial revenue losses if retroactive certifications continued implies that prior to the effective dates of [ERTA] amendments to [IRC] section 51(d)(15), retroactive certifications were permissible for purposes of claiming the credit. *Lucky Stores*, 92 T.C. at 1164–5, 1989 WL 55669.

Thus, while *Lucky Stores* allowed retroactive certifications for *taxable years before January 1, 1982*, it noted their elimination for subsequent years. Secondly, in distinguishing WIN and ERTA certification requirements, the only concern in *Lucky Stores* was the effective date of the ERTA. The plaintiff in *Lucky Stores* won a refund, but only for fiscal years prior to 1982. By contrast, the plaintiff in the instant case claims refunds for the taxable years 1982 and 1983.

Of various possible interpretations of the transition provision, plaintiff's interpretation seems least likely, because ERTA already provides in Section 261(g)(2) for specific grace periods for employees hired before ERTA's enactment. For these employees, an employer could wait until July 23, 1981 to request certification, the date ERTA passed in the Senate. ERTA § 261(g)(2). In certain cases, this date could be deferred even further, until September 26, 1981, or 45 days after ERTA's enactment. 26 U.S.C. § 51; ERTA § 261(g)(2)(C). Plaintiff, who did not request any certifications before September 26, 1981, actually had a "grandfather" period, but simply failed to take advantage of it. *See Albertson's*, 38 F.3d at 1051. ("Section 261(g)(2) clearly abolishes retroactive certification for all claims made after September 26, 1981.")

This court reads the transition provision as allowing for the proper "folding over" of credits between the tax years 1981 and 1982. It ensures that employers who received first-year WIN credits in 1981 receive second-

year ERTA credits in 1982. It also ensures that employers who had received second-year credits in 1981 could not receive a third-year of credits in 1982 under ERTA. The court finds the importance of a smooth transition between WIN and ERTA credits to be the most compelling rationale for the existence of the transition provision. It is far more compelling than one which proposes a very strained, albeit clever interpretation of both ERTA's express language and legislative purpose.

### CONCLUSION

ERTA's language and legislative history, in addition to persuasive judicial authority, all conflict with plaintiff's proposed interpretation of ERTA's transition provision. This court must therefore grant defendant's motion for summary judgement. The clerk is ordered to dismiss the complaint.

**IT IS SO ORDERED.**